# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GEORGE CABOT,

    Petitioner,

v.

KIMBERLY BUTLER, Warden, Lawrence Correctional Center,

    Respondent.

No. 15 C 1648
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Petitioner George Cabot ("Petitioner") was charged with first degree murder of Sergio Hernandez ("Hernandez") and the attempted murder and aggravated battery of Ricky Raya ("Raya"). Following a conviction and exhaustion of his state appeals, Petitioner has brought this federal habeas action.

The murder and related events occurred on July 8, 2005. That day, Petitioner and his co-defendant, Jeffrey Gerhardt ("Gerhardt") approached Hernandez, identified themselves as Latin Kings, and asked for Hernandez's gang affiliation. Petitioner shot Hernandez several times, killing him. Petitioner and co-defendant then went to Ricky Raya, who was sitting in a nearby parked car. Although Petitioner pointed his gun at Raya and pulled the trigger, the gun failed to discharge and Petitioner instead repeatedly used the firearm to club Raya in the head. Raya survived and ultimately testified for the prosecution in this case along with a second crime-scene witness, Victor Chavez ("Chavez"). At trial, both Raya and Chavez identified Petitioner and Gerhardt as perpetrators of the attacks.

During the trial, defense counsel did not object to gang evidence including testimony that Petitioner called himself a Latin King member; testimony that the offense occurred in Maniac

1

Latin Disciples territory; Raya's testimony that the area was contested by several gangs and that Petitioner used the Latin Kings slogan "King love" after shooting Hernandez; and Chavez's testimony that Petitioner used a gang slogan before shooting Hernandez. During closing, defense counsel did not object when the state argued the crimes were gang-motivated. Defense counsel admitted during her own closing that Petitioner was a Latin Kings member and suggested that Raya and Chavez—members of a rival gang—were attempting to frame their opponent. Petitioner was found guilty on all counts and sentenced to consecutive terms of 55, 10, and 5 years of imprisonment.

## I. PROCEDURAL BACKGROUND

### A. The Direct Appeal

On appeal, Petitioner's appellate counsel raised five arguments. These included (1) a claim that the prosecution misrepresented in court the true scope of the gang evidence it intended to introduce; (2) a claim that trial counsel was ineffective for failing to request a mistrial or move to poll the jury when the State's intent to present gang evidence came to light; (3) a claim that the trial court erred in telling potential jurors that, if selected for duty, they could not later inform the judge of any bias they did not reveal at *voir dire* and further erred in expounding on "grim statistics" concerning U.S. soldiers in Iraq, Hurricane Katrina, and the events of September 11, 2001; (4) a claim that the trial court erred in imposing consecutive instead of concurrent terms of imprisonment; and (5) a claim that Petitioner's mittimus erroneously did not reflect two additional days of credit for time in custody.

The Illinois Appellate Court granted Petitioner's fourth and fifth requests, converting his sentence to run concurrently and correcting the mittimus. However, the Appellate Court found that the first claim regarding prosecutorial misrepresentation was forfeited because Petitioner

failed to raise it before the trial court or in post-trial motions.

## B. Post-conviction Proceedings

In March of 2011, Petitioner filed for post-conviction remedies, charging his trial counsel with failing to do the following:

1. Raise a Confrontation Clause objection to the autopsy report and Dr. Denton's testimony;

2. "tell petitioner the punishment he faced if convicted";

3. "move to dismiss the indictment"; and

4. "give the constitutionally required notice that [petitioner] faced a sentence enhancement";

Petitioner further argued that appellate counsel was ineffective for failing to raise the four claims listed above; that the sentence enhancement for personally discharging a firearm is void because the trial court lacked authority to impose it; and that the trial court lacked subject matter jurisdiction.

At a later stage, Petitioner filed a supplemental post-conviction petition asserting various claims including:

1. The trial court's denial of Petitioner's motion to suppress his "identification testimony"

2. Trial counsel's alleged ineffectiveness because of:

   a. Failing to raise claim 1 in his post-trial motion

   b. Denying his request for a bench trial and failing to explain to Petitioner the possible types of trial

   c. Failing to challenge juror Paul Rykil

   d. Failing to object to lay opinion testimony

- e. Failing to argue the petitioner's attempted first degree murder and aggravated battery convictions violated the Illinois one-act one-crime rule and were inconsistent;

3. The trial court erroneously denied Petitioner's request to proceed pro se and violated Illinois Supreme Court Rule 401, and

4. Appellate counsel was ineffective for failing to raise claims 1, 2C, 2D, 2E, and 3 on appeal.

The circuit court dismissed the post-conviction petition as frivolous and patently without merit. Subsequently, Petitioner appealed on two grounds:

1. Trial counsel failed to raise a Confrontation Clause objection to Hernandez's autopsy and Dr. Denton's testimony on the autopsy report; and

2. Appellate counsel failed to raise a Confrontation Clause challenge to the autopsy report and Dr. Denton's testimony on direct appeal.

The Appellate Court affirmed the circuit court dismissal of the post-conviction petition, finding that because the autopsy report was not testimonial, it did not implicate the Confrontation Clause and neither the trial nor the appellate defense counsel were ineffective for failing to challenge admission of the report or Dr. Denton's testimony.

Finally, Petitioner sought a Petition for Leave to Appeal in the Supreme Court, contending:

1. The admission of Dr. Denton's testimony and the autopsy report violated Illinois law and the Sixth Amendment confrontation rights; and

2. Petitioner's trial and appellate counsel were ineffective for failing to object to the autopsy report and Dr. Denton's testimony pursuant to the Confrontation Clause

The Illinois Supreme Court denied the PLA and the United States Supreme Court denied certiorari in 2014. *See Cabot v. Illinois*, 135 S.Ct. 369 (2014).

### C. The United States District Court

The pro se petitioner sought a writ of habeas corpus under 28 U.S.C. § 2254 in this court

4

in February 2015.

In his habeas writ, Petitioner complains of:

1. Ineffective assistance of trial counsel for failing to

    a. question the jurors regarding anti-gang bias;

    b. reopen voir dire or request a mistrial after learning that the State would introduce gang evidence; and

    c. object to the Hernandez autopsy report and Dr. Denton's testimony on Confrontation Clause grounds, and for appellate counsel's failure to raise that argument on appeal

2. The trial court denied Petitioner a fair, impartial jury by admitting gang evidence without questioning the jury regarding anti-gang bias; and

3. There was no physical evidence that Petitioner shot the gun that caused the death of Hernandez, and this error affected Petitioner's sentencing as he may have been eligible for a 15-year firearm enhancement rather than a 25-to-life enhancement.

Subsequently, Petitioner filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court arguing ineffective assistance of trial counsel based solely on the failure to question jurors about anti-gang bias. This petition was denied by both the Illinois and United States Supreme Courts in 2010.

## II. LEGAL STANDARD

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings only if the state court's decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* § 2254(d); *see*

5

*also Hanson v. Beth,* 738 F.3d 158, 162 (7th Cir. 2013). This is a "highly deferential standard for reviewing claims of legal error by the state courts." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

Additionally, a habeas corpus petitioner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This means a petitioner must have "invoked one complete round of the State's established appellate review process." *Id.* "In Illinois, which has a two-tiered appellate review system, a petitioner must present a claim at each level of the state court system, either on direct appeal or in post-conviction proceedings." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). If a claim is procedurally defaulted, a federal court will not address its merits unless the petitioner can demonstrate both cause for and prejudice from the default or that a miscarriage of justice will occur if the court fails to address the merits. *See, e.g.*, *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

### III. DISCUSSION

I make reference in this section to the habeas claims as they are numbered in Section C above.

**A. Claims 1B, 2, and 3**

Three of Petitioner's claims (1B, 2, and 3) are procedurally defaulted for failure to assert them in post-conviction proceedings. Although Petitioner exhausted his state court remedies, he failed to re-raise claims 1B and 2 to the Illinois Supreme Court and failed to raise Claim 3 on either direct appeal or post-conviction proceedings.

Moreover, with regards to Claim 2, the trial Judge offered to allow Petitioner to reopen voir dire after it became apparent that additional gang evidence would be offered, and Petitioner refused to do so and did not later request to reopen voir dire. Additionally, Petitioner did not

6

raise this claim in his post-trial motion, leading the state appellate court to find that this argument was forfeited. There is no state law plain error rule which would permit Petitioner to take a second bite of the apple on the gang evidence issue.

Petitioner could overcome these procedural defaults by showing either cause for the default or actual innocence, but he has not done so. Not only does he fail to state either of these arguments, but the record does not suggest either to be the case.

Claims 2 and 3 also both fail to state a federal constitutional violation, as is required for federal habeas review. These claims both implicate state law and are not appropriately raised in federal court.

For all these reasons, claims 1B, 2 and 3 are procedurally defaulted.

## B. Claim 1A

Petitioner's claims of ineffective assistance require him to show 1) that counsel was deficient and 2) that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency prong requires that the petitioner demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The prejudice prong requires a showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. In assessing this claim, the court is highly deferential to counsel and observes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689. A failure to establish either deficient performance or prejudice dooms the claim, *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)), and if the petitioner is unable to make a sufficient showing on one of the *Strickland* prongs, the court need not consider the other. *Strickland*, 466 U.S. at 697; *see Atkins v. Zenk*, 667 F.3d 939,

946 (7th Cir. 2012).

Here, the Illinois Appellate Court reasonably found that defense counsel was not ineffective. Under a deferential review of defense counsel's actions, the state appellate court determined that trial counsel's failure to question the jurors on anti-gang bias was "strategic" and based in part on the concern that "questioning the venire could result in highlighting the gang issue." *Strickland* and its progeny have established wide latitude for counsel to make intentional, thought-out strategic decisions as Petitioner's trial attorney did here. *See Williams v. Washington,* 59 F.3d 673, 679 (7th Cir.1995); *Brown v. Sternes*, 304 F.3d 677, 691 (7th Cir. 2002) ("Ordinarily when an attorney articulates some strategic reason for a decision, we will defer to that choice."). Moreover, there was significant evidence against Petitioner aside from the gang evidence, including the testimony of two eyewitnesses to the crimes, so there is no reason to believe that but for the failure to root out anti-gang bias Petitioner would have received a different sentence. Claim 1A thus fails because Petitioner did not establish either unreasonably ineffective professional assistance or prejudice to his case.

**C. Claim 1C**

As with Claim 1A, the state appellate court reasonably found that neither trial nor appellate counsel were deficient for failing to object to the autopsy report and Dr. Denton's testimony. The court found that the autopsy report was a report prepared to determine the cause and manner of death and was not testimonial. *See People v. Leach*, 980 NE 2d 570, 592 (Ill. 2012). Thus, the lawyers' decision not to raise a Confrontation Clause objection at trial or on appeal was reasonable, as the autopsy report did not implicate Petitioner's Sixth Amendment rights. Nor is there any ground to challenge the admissibility of Dr. Denton's testimony as a scientific expert. In simple terms, there is no valid objection either attorney could have raised to

8

the autopsy report or the testimony of a scientific expert offered by Dr. Denton. Therefore, Claim 1C is denied.

Finally, I am denying a certificate of appealability in this case because I do not think a reasonable jurist could find that these claims are legally cognizable.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's 28 U.S.C. § 2254 habeas petition is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 23, 2016